**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

JOSEPH RONALD KNAUSS       : CIVIL ACTION
                          :
      vs.                 :
                          : NO. 07-CV-2935
CHRISTINE M. ANTHONY, LEHIGH :
COUNTY ADULT PROBATION AND   :
PAROLE, LEHIGH COUNTY        :
DEPARTMENT OF CORRECTIONS,   :
LEHIGH COUNTY PRISON, MAIN   :
FACILITY CORRECTION OFFICERS, :
WARDEN, MAIN FACILITY, and    :
DALE MEISEL, Warden of D.O.C. :

**MEMORANDUM AND ORDER**

**JOYNER, J.**                                       **August 12, 2008**

      This Section 1983 action is presently before the Court for disposition of the cross-motions for summary judgment of the parties.  For the reasons which follow, the plaintiff's motion is denied and the defendants' motion is granted.

**Factual Background**

      It appears from the amended complaint of the plaintiff, a state prisoner proceeding *pro se,* that this lawsuit has its origins in the events surrounding and immediately following his having been taken into custody by Defendant Christine Anthony and another parole officer, R. Mesko, "on a technical county parole violation due to a drug overdose on cocaine" on June 17, 2005. (Amended Complaint, ¶12).  According to the plaintiff, he repeatedly asked Defendant Anthony and Parole Officer Mesko for

medical care but was told "we don't do that, you will get medical
attention over at the (Lehigh County) prison" and thus "[t]he
plaintiff was ... denied medical care by Defendant
Anthony...[d]espite the fact that they were aware of the cocaine
overdose and the plaintiff's serious life threatening medical
condition." (Am. Compl., ¶s 14-16).  Thereafter, following his
arrival at Lehigh County Prison ("LCP"), the "Defendants' doc
with Prime Care medical stated to the Plaintiff 'you look fine,'
[t]he Plaintiff was further denied medical care by Defendant Doc
with Prime Care," and "[t]he Plaintiff was booked into the county
Jail Admission, Discharge Area," where he "collapsed in the
holding cell, a code blue was called, the Plaintiff was again
denied medical care by LCP, Prime Care and Prison officials."
(Pl's Am. Compl., ¶s17-20).  Mr. Knauss goes on to allege in his
complaint that he was subsequently placed in a cell on the Inmate
Intake Unit where he "collapsed numerous times" and that several
LCP guards entered his cell "and without warning assaulted the
plaintiff numerous times" and that "during the assault, other
correctional staff joined in the assault."  According to
Plaintiff, during the assault, one of the guards stood on his
chest causing his lung to collapse and he believes that "these
defendants kicked and struck him numerous times to the head and
body."  (Am. Compl., ¶s21-29).

Plaintiff further avers that after the assault, he was "drug

2

to the prison medical unit" and then taken by ambulance to the emergency room at St. Luke's Hospital in Allentown, Pennsylvania where he was admitted to the ICU and almost died.  (Am. Comp., ¶s30-33).  Plaintiff stayed in the ICU overnight and was transferred back to LCP the next day at which time he was placed in segregation "without cause or institutional misconduct charges."  (Am. Compl., ¶s 32-34).

Plaintiff commenced suit in this matter in January, 2007 by filing a *pro se* form complaint in the United States District Court for the Middle District of Pennsylvania.  Because venue in that district was improper, Middle District Judge Rambo granted the defendants' motion for change of venue on July 12, 2007 and transferred the case to this Court.  Via Order dated July 31, 2007, Plaintiff was given leave by the undersigned to file an Amended Complaint which he did on August 20, 2007 joining the corrections officers who allegedly assaulted him as individual defendants.  Pursuant to 42 U.S.C. §1983, the Amended Complaint charges Defendants with excessive force, cruel and unusual punishment and deliberate indifference in denying him medical care in violation of the 8th Amendment, confinement in segregation without due process of law, and with the common law torts of assault and negligence.  Because Plaintiff's claims against the individual corrections officers were time-barred, however, on November 15, 2007, this Court partially granted the

defendants' motion for summary judgment and dismissed the claims against the individual officers[1] but denied the motion as to the other defendants for the reason that summary judgment at that time would be premature given that Plaintiff had not yet had the opportunity to take discovery.  Defendants now move for summary judgment on all of the plaintiff's remaining claims.

## Standards Governing Summary Judgment Motions

Summary judgment is proper "if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  Fed.R.Civ.P. 56(c).  An issue is genuine only if there is a sufficient evidentiary basis on which a reasonable jury could find for the non-moving party, and a factual dispute is material only if it might affect the outcome of the suit under governing law.  Kaucher v. County of Bucks, 456 F.3d 418, 423 (3d Cir. 2006), citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).  If the non-moving party bears the burden of persuasion at trial, "the moving party may meet its burden on summary judgment by

---

[1]  Because one of the corrections officers who is alleged to have assaulted the plaintiff, Kelvin Courtright was no longer employed by Lehigh County Prison, he is unrepresented in this action.  In fact, the record in this matter now reflects that Mr. Courtright is serving a life sentence for the murder of his girlfriend and that he was terminated from his employment at LCP on April 30, 2004.  Thus, despite the contrary allegations in Mr. Knauss' complaint that Mr. Courtright was among the corrections officers who assaulted him on June 17, 2005, we find that Mr. Courtright is entitled to judgment in his favor as a matter of law on this basis as well as for the reasons that the plaintiff's claims against him were also time-barred under the statute of limitations and because there is no evidence that the plaintiff ever properly served him with original process.

showing that the nonmoving party's evidence is insufficient to carry that burden." Id., quoting Wetzel v. Tucker, 139 F.3d 380, 383 n.2 (3d Cir. 1998).  A non-moving party, in turn, has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial. Gleason v. Norwest Mortgage, Inc., 243 F.3d 130, 138 (3d Cir. 2001).  In conducting our review, we view the record in the light most favorable to the non-moving party and draw all reasonable inferences in their favor.  See, Nicini v. Morra, 212 F.3d 798, 806 (3d Cir. 2000).

## Discussion

### A.  Plaintiff's Section 1983 Claims Under the 8th Amendment and for Common Law Assault

It is axiomatic that Section 1983 authorizes redress for violations of Constitutional or federal statutory rights; it is not, by itself a source of substantive rights. Baker v. McCollan, 443 U.S. 137, 145, n.3, 99 S. Ct. 2689, 2695, n.3, 61 L. Ed. 2d 433 (1979).  Given that to maintain a cause of action under §1983, a plaintiff must demonstrate that the defendant, acting under color of state law, deprived him of a right secured by the Constitution or federal law, "the first step in evaluating a Section 1983 claim is to 'identify the exact contours of the underlying right said to have been violated and to determine whether the plaintiff has alleged a deprivation of a constitutional right at all.'" Kaucher, 455 F.3d at 423, quoting

5

County of Sacramento v. Lewis, 523 U.S. 833, 841 n.4, 118 S. Ct.
1708, 140 L. Ed. 2d 1043 (1998) and Nicini v. Morra, 212 F.3d
798, 806 (3d Cir. 2000).

First, Defendants here move for summary judgment on
Plaintiff's claims that Defendant Parole Officer Christine
Anthony was deliberately indifferent to his medical needs and
that he was assaulted by Corrections Officers Dugan, Doe and
Courtwright resulting in his having suffered a collapsed lung.
Given that it is undisputed that the treatment a prisoner
receives in prison and the conditions under which he is confined
are subject to scrutiny under the Eighth Amendment,[2] we first
examine the contours of the rights conferred under that
Amendment.  See, e.g., Helling v. McKinney, 509 U.S. 25, 31, 113
S. Ct. 2475, 2480, 125 L. Ed. 2d 22 (1993).

The Supreme Court has long recognized that an inmate must
rely on prison authorities to treat his medical needs and that if
the authorities fail to do so his needs will not be met.  This,
even in less serious cases, could well result in pain and
suffering which no one suggests serves any penological interest.

---

[2]  The parties here assume that the claims advanced in this matter
should be evaluated under the lens of the Eighth Amendment.  While we cannot
glean from the record before us precisely what Plaintiff's status was at the
time of the incident complained of other than that he was a parole violator,
given that "the [14th Amendment] due process rights of a detainee are at least
as great as the Eighth Amendment protections available to a convicted
prisoner," we shall examine the plaintiff's claims here under the Eighth
Amendment standard.  See, e.g., County of Sacramento v. Lewis, 523 U.S. 833,
849, 118 S. Ct. 1708, 1719, 140 L. Ed. 2d 1043 (1998), quoting City of Revere
v. Massachusetts General Hospital, 463 U.S. 239, 103 S. Ct. 2979, 77 L. Ed. 2d
605 (1983); Hubbard v. Taylor, 399 F.3d 150 (3d Cir. 2005).

Estelle v. Gamble, 429 U.S. 97, 103, 97 S. Ct. 285, 290, 50 L.
Ed. 2d 251 (1976).

This is not to say, however, that every claim by a prisoner
that he has not received adequate medical treatment states a
violation of the Eighth Amendment.  Estelle, 429 U.S. at 105, 97
S. Ct. at 291.  Routine discomfort in prison is part of the
penalty that inmates pay for their offenses, and only those
extreme deprivations that deny the minimal civilized measure of
life's necessities are sufficiently grave to form the  basis for
a claim of cruel and unusual punishment.  Bass v. Carroll, 251
Fed. Appx. 75, 77 (3d Cir.  Oct. 16, 2007).  Thus an accident,
although it may produce added anguish, is not on that basis alone
to be characterized as wanton infliction of unnecessary pain.
Id.  Rather, what is necessary to state an Eighth Amendment claim
is "deliberate indifference to [the] serious medical needs of a
prisoner, ... whether manifested by prison doctors in their
response to the prisoner's needs or by prison guards in
intentionally denying or delaying access to medical care or
intentionally interfering with the treatment once prescribed."
Estelle, 429 U.S. at 104-105, 97 S. Ct. at 291.  See also, Rouse
v. Plantier, 182 F.3d 192, 197 (3d Cir. 1999).  Under this
standard, "a prison official cannot be found liable under the 8th
Amendment for denying an inmate humane conditions of confinement
unless the official knows of and disregards an excessive risk to

inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 1979, 128 L. Ed. 2d 811 (1994).  It should further be noted that a medical need qualifies as "serious" for purposes of this analysis if, for example, "it is one that has been diagnosed by a physician as requiring treatment or is so obvious that a lay person would easily recognize the necessity for a doctor's attention."  Young v. Kazmerski, 2008 U.S. App. LEXIS 4127, 266 Fed. Appx. 191, 193 (3d Cir. Feb. 25, 2008), quoting Monmouth County Correctional Institutional Inmates v. Lanzaro, 834 F.2d 326, 346-47 (3d Cir. 1987).

Similarly, the Court has also found that the use of excessive physical force against a prisoner may constitute cruel and unusual punishment even though the inmate does not suffer serious injury.  Hudson v. McMillian, 503 U.S. 1, 4, 112 S.Ct. 995, 997, 117 L. Ed. 2d 156 (1992).  While the Eighth Amendment is always violated "when prison officials maliciously and sadistically use force to cause harm," the Amendment's prohibition of cruel and unusual punishment necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind and/or is applied in a good-faith

8

effort to maintain or restore discipline.  Ali v. McAnany, 262
Fed. Appx. 443, 446 (3d Cir. Jan. 25, 2008) quoting Hudson,
supra.; Brooks v. Kyler, 204 F.3d 102, 106 (3d Cir. 2000).  Thus,
some inquiry into the prison official's state of mind is
necessary.  See, Wilson v. Seiter, 501 U.S. 294, 299, 111 S. Ct.
2321, 2324, 115 L. Ed. 2d 271 (1991).

In this case, it appears from the evidence thus far produced
that on the morning of June 15, 2005, the plaintiff spoke with
Ms. Anthony, his parole officer, and told her that he had
violated the terms and conditions of his parole by overdosing on
cocaine, marijuana, mushrooms, and alcohol and Ms. Anthony
directed the plaintiff to get a drug and alcohol evaluation and
report for inpatient treatment.  Plaintiff's declaration states
that he did get the drug evaluation on June 15, 2005 but that on
June 16, 2005, he was taken by ambulance to Lehigh Valley
Hospital because of a cocaine overdose.  Against medical advice,
the plaintiff left Lehigh Valley Hospital later that same day.
Plaintiff's medical records from Lehigh Valley Hospital reflect
that when he was seen in the Emergency Room at approximately 7:30
a.m. on June 16, 2005, he was anxious and sweating with
complaints of severe chest pain, tightness, pressure and
shortness of breath.  His urinalysis tested positive for cocaine
but his chest x-ray was normal.  Although he was going to be
admitted, he checked himself out against medical advice at 10:10

a.m.   (Exhibit "C" to Plaintiff's Response to Defendant's Motion
for Summary Judgment).

According to the Affidavit of Plaintiff's mother, Carol
Trexler, Plaintiff called her on the morning of June 16th asking
her to pick him up at the hospital.  Ms. Trexler went to the
wrong hospital but then drove to Plaintiff's brother's apartment
and waited in the parking lot because she saw Plaintiff's car
parked there.  A short while later, she noted Plaintiff walking
toward her car.  "He was all white and clammy to the touch,
sweating profusely all over and complained his chest hurt and he
could hardly breathe."  Ms. Trexler convinced Plaintiff to come
to her house and rest.  She then left a message for Christine
Anthony on the evening of June 16th.  Early the following
morning, Plaintiff's mother left another message for Ms. Anthony
asking her to please come to her home and get him "before he
kills himself because he did a drug overdose yesterday."  Her
message went to explain that "Joseph can not breathe and his face
is all white, he's clammy and complains of chest pain."  (Exhibit
"B" to Plaintiff's Response to Defendants' Motion for Summary
Judgment).  Ms. Trexler's Affidavit goes on to state that she
called Ms. Anthony again at approximately 9 a.m. and spoke with
her.  At 10:30 a.m., Anthony and Mesko arrived to take the
plaintiff back to Lehigh County Prison.  Anthony "watched
closely" while Mesko handcuffed Mr. Knauss.  At that time,

Plaintiff told Anthony and Mesko that he could not breathe and his chest hurt him and Ms. Trexler told both probation officers to "please make sure he gets medical attention and sees a doctor immediately," to which Mesko remarked "don't worry mom, he'll get medical attention at the jail."  Ms. Trexler's affidavit further recites that "Christine promised me that she would make sure Joseph gets medical help at the prison."  (Exhibit "B" to Plaintiff's response to Defendant's Motion for Summary Judgment).

According to the plaintiff's declaration, he also told Defendant Anthony that he needed to go back to the hospital because he could hardly talk or breathe, was sweating and hyperventilating, and his neck was swollen to which Ms. Anthony responded that he would get medical attention at the prison. Plaintiff further declares that Anthony and Mesko placed him in the back of a county van and took him to Lehigh County Prison where Anthony told Prime Care Medical officials that the plaintiff had done "too much drugs."  Plaintiff claims that he collapsed numerous times at the prison but was denied medical care by Prime Care officials.  (Exhibit A-2 to Plaintiff's Response in Opposition to Defendants' Motion for Summary Judgment).

The Lehigh County Prison records evince that Plaintiff was seen by Prime Care Medical personnel in the admissions and discharge (A & D) section of the prison at 1 p.m.  At that time,

11

he was alert and oriented to time, place and person, was
cooperative and gave what appears to be an accurate history of
having consumed cocaine laced with heroin, for which he was
treated at Lehigh Valley Hospital and that he checked himself
out.  The plaintiff was observed as having a swollen neck and
trouble breathing and he was apparently placed in a holding cell
in A & D.  While there, he collapsed in his cell and was attended
to by several LCP and Prime Care employees.  Plaintiff's vital
signs were taken and, as they were normal, he was helped to a
seat and given water to drink.  At approximately 3:30 p.m., Mr.
Knauss was transferred to the Reception and Diagnostic Housing
Unit.  Some 20 minutes later, he was observed lying on the floor
of his cell complaining of difficulty breathing.  The Corrections
Officers immediately called medical staff and a nurse came to
escort Plaintiff to the prison medical unit.  He returned to his
cell approximately 15 minutes later but was again returned to
medical twenty minutes later when he was again observed lying on
the floor of his cell.  There he remained for observation until
approximately 6:40 p.m. when a Prime Care nurse determined that
he should be admitted to a hospital.  Plaintiff was then
transported via ambulance to St. Luke's Hospital in Allentown at
approximately 7:05 p.m., where he was admitted and eventually
placed in the Intensive Care Unit for treatment of a collapsed
lung and subcutaneous emphysema.  Plaintiff remained in the

12

hospital overnight and was discharged the following day, June 18, 2005 and returned to the prison.

Nowhere in either the prison records or the records from Plaintiff's admission to St. Luke's Hospital is there any evidence that the cause of Plaintiff's collapsed lung and swollen neck was anything other than his drug overdose.  There is further no evidence on this record of any bruises, cuts or marks of any kind such as would suggest that the plaintiff was ever beaten or otherwise assaulted by anyone on the staff of LCP, Ms. Anthony, Mr. Mesko or anyone else on June 17, 2005.[3]

From the foregoing, it appears clear to this Court that Mr. Knauss received appropriate medical care in a timely fashion for his drug overdose.  While we would agree with the plaintiff that perhaps he could have been taken to the hospital a few hours earlier, we confess that we are confused by the plaintiff's position given that he voluntarily checked himself out of the hospital one day earlier and that in lieu of calling his probation officer, he and his mother could just as easily have called for a 911 ambulance.  In short, there is absolutely no evidence in this case to substantiate the plaintiff's claims that the defendants were deliberately indifferent to his medical needs or that his physical condition resulted from the malicious and

---

[3]  As is reflected by the personnel records from LCP, one of the officers whom Plaintiff accuses of participating in the assault against him, Kelvin Courtright, had been terminated from his employment at LCP more than one year before the alleged June 17, 2005 incident.

sadistic use of excessive force against him by LCP officers.
Summary judgment is properly entered in favor of the defendants
on the plaintiff's §1983 claims.

We likewise find no evidence to substantiate a claim under
Pennsylvania common law for assault.  Indeed, "assault is an
intentional attempt by force to do an injury to the person of
another and a battery is committed whenever the violence menaced
is actually done, though in ever so small a degree, upon the
person." Renk v. City of Pittsburgh, 537 Pa. 68, 76, 641 A.2d
289, 293 (1994).  An assault requires both the actor's intent to
place the individual in imminent apprehension of harmful or
offensive contact and the individual's actual imminent
apprehension; if there is no assault, then there can be no claim
for battery.  Glass v. City of Philadelphia, 455 F. Supp. 2d 302,
365 (E.D. Pa. 2006).  Given that there is absolutely no evidence
whatsoever to substantiate the plaintiff's allegations that he
was assaulted by the three LCP guards, we must grant summary
judgment to the defendants on this claim as well.[4]

---

[4]  We additionally note that *respondeat superior* liability does not lie
in §1983 cases against an entity itself such as the Lehigh County Adult
Probation and Parole Department and the Lehigh County Department of
Corrections or a supervisor such as Warden Meisel.  Rather, it is only when
the injuries suffered are directly caused by the actions of the entity or
supervisor itself that recovery may be had such as where they resulted from
some settled custom, policy or practice of the entity or where the supervisor
personally participates or directs others to violate the plaintiff's
constitutional rights or knew of his subordinates' constitutional violations
and acquiesced in them.   See, Monell v. New York Department of Social
Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978); Baker v.
Monroe Township, 50 F.3d 1186, 1191 (3d Cir. 1995); Sample v. Diecks, 885 F.2d
1099, 1117-1118 (3d Cir. 1989).  As there is no evidence on this record of

B.    *Plaintiff's §1983 Claim for Violation of his Rights to Due Process of Law*

Defendants also seek the entry of summary judgment in their favor on the plaintiff's claim that he was placed in segregation without just cause or the filing of charges following his discharge from St. Luke's Hospital and upon his return to the Lehigh County Prison in violation of the 14th Amendment.

The Fourteenth Amendment's Due Process Clause protects persons against deprivations of life, liberty, or property, and those who seek to invoke its procedural protection must establish that one of these interests[5] is at stake. Wilkinson v. Austin, 545 U.S. 209, 125 S. Ct. 2384, 2393, 162 L. Ed. 2d 174 (2005). A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word "liberty," or it may arise from an expectation or interest created by state laws or policies. Id., citing Vitek v. Jones, 445 U.S. 480, 493-494, 100 S. Ct. 1254, 63 L. Ed. 2d 552 (1980) and Wolff v. McDonnell, 418

_____

any unconstitutional customs, policies or practices on the part of the Lehigh County Prison or its Department of Corrections or of any personal participation or knowledge on the part of the Warden that any of his subordinates were violating the plaintiff's constitutional rights, we also enter summary judgment in their favor for these reasons.

[5] Stated otherwise, the liberty interest component of the Fourteenth Amendment "denotes not merely freedom from bodily restraint but also the right of the individual to contract, to engage in any of the common occupations of life, to acquire useful knowledge, to marry, establish a home and bring up children, to worship God according to the dictates of one's own conscience, and generally to enjoy those privileges long recognized as ... essential to the orderly pursuit of happiness by free men." McCool v. City of Philadelphia, 494 F. Supp. 2d 307, 325 (E.D. Pa. 2007), quoting Meyer v. Nebraska, 262 U.S. 390, 399, 43 S. Ct. 625, 67 L. Ed. 1042 (1923).

U.S. 539, 556-558, 94 S. Ct. 2963, 41 L. Ed. 2d 935 (1974).
Thus, "in analyzing a procedural due process claim, the first
step is to determine whether the nature of the interest is within
the contemplation of the 'liberty' or 'property' language of the
Fourteenth Amendment."  Shoats v. Horn, 213 F.3d 140, 143 (3d
Cir. 2000).  Once it has been determined that the interest
asserted is protected by the Due Process Clause, the question
then becomes what process is due to protect it. Id.

The Supreme Court has recognized that by adopting prison
regulations, States may under certain circumstances create
liberty interests which are protected by the Due Process Clause.
Sandin v. Conner, 515 U.S. 472, 484, 115 S. Ct. 2293, 2300, 132
L. Ed. 2d 418 (1995).  However, "these interests will be
generally limited to freedom from restraint which, while not
exceeding the sentence in such an unexpected manner as to give
rise to protection by the Due Process Clause of its own force,
... nonetheless imposes atypical and significant hardship on the
inmate in relation to the ordinary incidents of prison life."
Id.  The baseline for determining what is "atypical and
significant" - the "ordinary incidents of prison life" - is
ascertained by what a sentenced inmate may reasonably expect to
encounter as a result of his or her conviction in accordance with
due process of law.  Griffin v. Vaughn, 112 F.3d 703, 706 (3d
Cir. 1997).  Accordingly, "the touchstone of the inquiry into the

16

existence of a protected, state-created liberty interest in
avoiding restrictive conditions of confinement is not the
language of regulations regarding those conditions but the nature
of those conditions themselves 'in relation to the ordinary
incidents of prison life.'" Wilkinson, 125 S. Ct. at 2394,
quoting Sandin, 515 U.S. at 484, 115 S. Ct. at 2293.

      In this case, the gravamen of Mr. Knauss' Due Process Claim
is his placement and retention in the IC4 Medical Isolation Unit
from June 18, 2005 until July 5, 2005 when he was re-classified
to return to the general population.  It appears from the LCP
records and the affidavit of Warden Meisel that the plaintiff was
initially returned to his cell on the 1D2 housing unit upon his
return from St. Luke's Hospital on June 18, 2005 but he continued
to have difficulty breathing due to his decreased lung capacity
and anxiety.  Following the calling of another Code Blue for
plaintiff at approximately 2 p.m. that day, the decision was made
to transfer him to the medical isolation unit for observation and
he was moved at approximately 3:30 that same afternoon.
Although Plaintiff remained in the Medical Isolation Unit until
July 5th, there is no record of his having filed any grievances
or complaints regarding his placement.  As recognized in Sandin,
the placement of an inmate in solitary confinement for a period
of thirty days does not present a dramatic departure from the
basic conditions of a prisoner's indeterminate sentence nor does

it "present the type of atypical, significant deprivation in which a State might conceivably create a liberty interest." Sandin, 115 S. Ct. at 2301.  Given that Mr. Knauss was confined in the medical isolation unit for just slightly over two weeks and inasmuch as he has presented no evidence to demonstrate that his retention there significantly differed or was somehow atypical from the conditions under which prisoners are confined in the general population, we find that he has failed to demonstrate a valid, protectable liberty interest.  Summary judgment shall therefore be granted in Defendants' favor on Plaintiff's Due Process claim.

   C.   *Plaintiff's Negligence Claim*

   Finally, to the extent that the plaintiff's amended complaint may be understood to plead a cause of action for common law negligence, we must also grant summary judgment to the defense.

   It is well-established that a claim for negligence under Pennsylvania law contains four elements: (1) a duty or obligation recognized by the law requiring the actor to conform to a certain standard of conduct for the protection of others against unreasonable risks; (2) a failure to conform to the standard required, *i.e.,* a breach of that duty; (3) a causal connection between the conduct and the resulting injury; and (4) actual loss or damage resulting in harm to the interests of another.

18

Northwestern Mutual Life Insurance Co. v. Babayan, 430 F.3d 121, 139 (3d Cir. 2005); City of Philadelphia v. Beretta U.S.A. Corp., 277 F.3d 415, 422 n.9 (3d Cir. 2002); Martin v. Evans, 551 Pa. 496, 711 A.2d 458, 461 (1998).  Giving the plaintiff the benefit of all doubt that the defendants here owed him a duty of care, there is simply no evidence whatsoever that they breached that duty or that the plaintiff suffered any resulting injury as a result thereof.  Again, the evidence before the Court reflects that the defendants in fact fulfilled any and all obligations which they may have owed to the plaintiff by ensuring that he received appropriate medical care and by continuing to monitor and oversee his condition following his release from the hospital.  For all of these reasons, summary judgment shall be entered in favor of the defendants on all of the plaintiff's remaining claims.

An order follows.

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

```
JOSEPH RONALD KNAUSS           : CIVIL ACTION
                               :
          vs.                  :
                               : NO. 07-CV-2935
CHRISTINE M. ANTHONY, LEHIGH   :
COUNTY ADULT PROBATION AND     :
PAROLE, LEHIGH COUNTY          :
DEPARTMENT OF CORRECTIONS,     :
LEHIGH COUNTY PRISON, MAIN     :
FACILITY CORRECTION OFFICERS,  :
WARDEN, MAIN FACILITY, and     :
DALE MEISEL, Warden of D.O.C.  :
```

**<u>ORDER</u>**

     AND NOW, this  12th  day of August, 2008, upon consideration of Defendants' Second Motion for Summary Judgment (Docket No. 41) and Plaintiff's cross-Motion for Summary Judgment filed in response thereto (Docket No. 51), it is hereby ORDERED that, for the reasons set forth in the preceding Memorandum Opinion, the Defendants' Motion is GRANTED, the Plaintiff's Motion is DENIED and Judgment is hereby entered as a matter of law in favor of the Defendants and against Plaintiff on all of the claims set forth against them in no amount.

BY THE COURT:


s/J. Curtis Joyner
_____

20

J. CURTIS JOYNER,          J.